IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SUE GIBBS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 08-0196-CG-C |
| | ) |
| **GEORGIA-PACIFIC WOOD** | ) |
| **PRODUCTS LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant, Georgia-Pacific Wood Products LLC ("Georgia-Pacific"), for summary judgment (Docs. 46, 56), plaintiff's response thereto (Doc. 57), defendant's motion to strike (Doc. 60), defendant's reply in support of summary judgment (Doc. 61), plaintiff's opposition to defendant's motion to strike (Doc. 62), plaintiff's motion to strike (Doc. 63), and defendant's opposition to plaintiff's motion to strike (Doc. 65). The court finds that Georgia-Pacific has not met its burden of establishing the Faragher defense. Georgia-Pacific also has not shown it is entitled to summary judgment with regard to plaintiff's assault and battery claim. However, plaintiff appears to have abandoned any claim for lost wages, interest on lost wages, lost benefits, front pay, reinstatement or any other equitable relief. Therefore, Georgia-Pacific's motion is due to be granted in part and denied in part.

## FACTS

Plaintiff's complaint asserts the following claims: (Count One) sexual harassment/hostile work environment in violation of Title VII, (Count Two) retaliation, (Count Three) negligent and wanton supervision, (Count Four) assault and battery, (Count Five) invasion of privacy, and (Count Six) outrage.  Counts Two, Three, Five and Six were voluntarily dismissed, leaving only the sexual harassment and assault and battery counts. (Docs. 17, 26).  Defendant moves for summary judgment as to plaintiff's Title VII claim of sexual harassment/hostile work environment, her state law claim of assault and battery, and any claim for lost wages.

The plaintiff, Sue Gibbs, was employed with Georgia-Pacific from May 2000 to March 2008 (Gibbs Depo. pp. 34-35).  Gibbs worked in the "Green End Department" on the "swing shift" which began at 6:00 p.m. and ended at 4:30 a.m. (Gibbs Depo. p. 44, Spencer Depo. pp. 14-15).  Beginning in July 2005, Joe Weaver became swing shift supervisor. (Spencer Depo. p. 22).  Gibbs claims that in July 2005, Weaver began sexually harassing her. (Complaint, Doc. 1, p. 2).  The harassment allegedly became more severe in January 2006 and continued until Weaver resigned in March 2006. (Id. at p. 3).  For the purposes of this summary judgment motion only, Georgia-Pacific admits that Gibbs has presented sufficient evidence to show that she was subjected to unwelcome harassment, based on sex, which was sufficiently severe and pervasive to alter the terms and conditions of her employment. (Doc. 56, p. 6).

Gibbs lists numerous sexually harassing conduct she alleges she endured from Weaver between July 2005 and March 2006. (Doc. 57 pp. 3-4 (citing Gibbs' Deposition)).  In March 2006, Gibbs recorded an incident in which Weaver reportedly followed Gibbs into a room, closed and blocked the door, and attempted to touch Gibbs, get her to take her clothes off, and

asked her for sex. (Gibbs Depo. pp. 161, 210). When Gibbs protested and said that someone may come in, Weaver responded the he did not "give a fuck who came in." (Gibbs Depo. pp. 91, 102). On another occasion when Gibbs warned that cameras might be watching, Weaver again responded that he did not "give a fuck." (Gibbs Depo. pp. 91, 102).

Gibbs asked co-workers to watch out for her when Weaver was around or when he called her into his office. (Gibbs Depo. pp. 89, 99; Harris Depo. p. 54; Evans Depo. p. 40). Co-workers also witnessed inappropriate behavior by Weaver toward Gibbs and were aware of Weaver's sexually harassing conduct. (J. Harris Depo. pp. 15-17; Kidd Depo. pp. 8, 15; Mims Depo. p. 14; Tucker Depo. pp. 12, 19-20, 24; Burns Depo. pp. 8, 22-23, 28; Evans Depo. pp. 14-15, 39-41; Harris Depo. pp. 9-11, 21, 43-44, 52-54, 56, 63). Other female employees report that Weaver sexually harassed them also. (Mims Depo. pp. 7-8; Burns Depo. p. 9; Kidd Depo. pp. 12-14, 16, 22, 27-19).

In 2005, Kervin Thomas was the "lead man" or "crew leader" for the Green End and reported to the Green End superintendents, Greg Harrison and Jeff Salter. (Thomas Depo. pp. 5-7). As the crew leader, Thomas is an hourly employee and his duties included the following: "supervise all the people, handle all the down time reports, production reports, keep all the machines running, do the routine maintenance, keep maintenance up to date on what's going on as to something breaks down, like that." (Thomas Depo. pp. 7-9). Sometime between 2005 and 2006, Thomas moved to the same position in the Wood Yard Department. (Thomas Depo. p. 10). Thomas was lead man in the Wood Yard when Weaver was supervisor of the Green End, so Thomas never reported to Weaver. (Thomas Depo. p. 13). In the evening, Thomas was one of the highest ranking people at the facility. (Thomas Depo. p. 14).

Willie Hunter was the Shift Supervisor for the second shift - from 3:00 to 11:00 p.m. (Hunter Depo. pp. 5-6). Hunter was the highest ranking shift supervisor during the second shift. (Hunter Depo. p. 7).

Gibbs states that she repeatedly complained about Weaver's behavior to Willie Hunter and Kervin Thomas (Gibbs Depo. pp. 66, 87, 90, 106, 112, 117, 138, 141, 143, 145-146, 150, 164). Hunter acknowledges that Gibbs complained to him on a number of occasions. (Hunter Depo. p. 58). Other employees also complained or discussed Weaver's behavior toward Gibbs with Hunter. (Harris Depo. pp. 46-47; Evans Depo. pp. 13, 21; Hunter Depo. pp. 22-23, 25). Hunter responded that Weaver was "just fascinated" with Gibbs. (Hunter Depo. p. 39; Harris Depo. p. 58; Evans Depo. pp. 13, 21). Hunter did not report Gibbs' complaints to his supervisor or to Human Resources. (Hunter Depo. pp. 42, 44, 52). Kervin Thomas also failed to report Gibbs' repeated complaints of sexual harassment to his supervisor or to Human Resources until March 13, 2006, when Gibbs informed Thomas that she had taped Weaver's harassment. (Gibbs Depo. p. 162; Thomas Depo. pp. 27-28; Spencer p. 69). Other employees had also reported to Thomas about Weaver's conduct toward Gibbs. (Harris Depo. p. 60; Evans Depo. p. 13).

After Gibbs met with Thomas and informed him that she had a tape of Weaver's harassment, Thomas notified Jeff Salter, Department Superintendent, that Gibbs had complained about sexual conduct by Weaver, that she had him on tape, and that she had contacted a lawyer. (Gibbs Depo. p. 162; Thomas Depo. p. 27). The same day, Salter notified Sam Spencer, Human Resources Director, of Gibbs' compliant. (Spencer Depo. pp. 40-41). Sam Spencer has held the position of Regional Human Resources Manager since September 2006. (Spencer Depo. p. 5). From 1995 to September 2006, Spencer was HR Manager at the Peterman Plywood Plant were

Gibbs worked. (Spencer pp. 5-6). Spencer was normally at the plant from 6:45 a.m. to 6:45 p.m and was not there during the swing shift hours. (Spencer Depo. pp. 32, 33).

On March 14, 2006, Spencer met with Gibbs and Salter and then questioned Gibbs' co-workers about Weaver's conduct. (Spencer Depo. pp. 42, 63; Gibbs Depo. pp. 161-163, 166). After plaintiff's first conversation with Spencer, she was not thereafter harassed and, in fact, never spoke to Weaver again. (Plaintiff Depo. p. 225). Spencer also interviewed Weaver. (Spencer Depo. p. 119). Spencer interviewed Weaver on March 20, 2006, and at the conclusion of the meeting, Weaver resigned. (Spencer Depo. pp. 66, 122). No employees were counseled or reprimanded for failing to report Weaver's behavior. (Spencer Depo. pp. 81, 131).

Georgia-Pacific reportedly has a long-standing, widely disseminated policy which prohibits sexual harassment and sets forth mechanisms for reporting sexually inappropriate conduct. (Spencer Decl. ¶¶ 5-6). Georgia-Pacific's harassment policy is in the employee handbook, which is distributed to all new employees during orientation and again following any handbook revisions. (Spencer Decl. ¶ 6). Plaintiff, Sue Gibbs, received a copy of the 2005 employee handbook in January 2005. (Plaintiff Depo. pp. 63-64). The harassment policy is also posted on bulletin boards around the facility. (Spencer Decl. ¶ 8; Johnny Harris Depo. p. 13; Harvey Harris Depo. pp. 32, 34; Evans Depo. p. 9; Burns Depo. p. 7). The posters display a telephone number for employee complaints. (Spencer Decl. ¶ 8; Harvey Harris Depo. p. 39). Sexual harassment training is a mandatory part of employee orientation and includes a thorough discussion of Georgia-Pacific's harassment policy and complaint procedures. (Spencer Decl. ¶ 6; Johnny Harris Depo. pp. 12-13; Burns Depo. p. 6). Additionally, at least once per year, the sexual harassment policy and complaint procedures were reviewed with employees during

mandatory plant-wide meetings. (Spencer Decl. ¶ 6).  Georgia-Pacific's sexual harassment policy states:

> If you encounter what you believe to be discriminatory harassment (or if you become aware of such possible harassment, even if you are not yourself a victim), you should bring the matter to the immediate attention of your supervisor.  If that would be uncomfortable, you should contact your local human resources manager. This person is identified in the "EEO/Affirmative Action Program" posters located at the plant entrance bulletin board and break room bulletin boards.  You should also feel free to contact the Corporate EEO Department in Atlanta (404-652-4298).

(Doc. 58, Ex. 15).  Georgia-Pacific's regional HR manager, Sam Spencer, testified during his deposition that their policy requires employees to report harassment to their supervisor or, if uncomfortable with that, then to the human resources manager or to call the number in Atlanta, but employees could report such incidents to other supervisors or management they felt comfortable with reporting the conduct. (Spencer Depo. pp. 30-32, 130).  Spencer testified that it is Georgia-Pacific's policy that a supervisor that becomes aware of sexual harassment should report it and that failure by a supervisor to report any incident would violate the EEO policy. (Spencer Depo. pp. 24-26).

## LEGAL ANALYSIS

### I. Motions to Strike

Defendant moves to strike plaintiff's responsive brief because it does not comply with this court's local rules in that it uses the wrong font size.  As a result, defendant asserts that the brief exceeds the length allowed for responsive briefs.  Plaintiff responds that the font size was a mistake that did not prejudice defendant and that after reprinting the brief with the correct font, the corrected brief only exceeds the page limit by four pages.  Plaintiff moves this court to allow plaintiff to exceed the page limit and file a corrected brief that is 34 pages in length.  Plaintiff's

mistake does not appear to have been intentional and the court finds a four page extension to be reasonable. Upon consideration, defendant's motion to strike (Doc. 60) is **DENIED** and the court will consider the brief as is.

Plaintiff moves to strike those portions of defendant's reply brief which rely on additional evidence that was not submitted with its summary judgment motion. Defendant responds that it did not submit any new arguments and only brought forth additional evidence in order to rebut plaintiff's arguments. The court finds that the additional material is immaterial to the court's determination, as the result would be the same if they were not considered by the court. Therefore, the court finds that the motion to strike (Doc. 63) is **MOOT**.

### II Motion for Summary Judgment

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations

omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e) "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Discussion**

The plaintiff alleges that Weaver's conduct created a hostile work environment in violation of Title VII. According to the Eleventh Circuit, a hostile work environment claim under Title VII is established:

> upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). This court has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. See, e.g., [Mendoza v. Borden, 195 F.3d 1238,1245(11th Cir. 1999)] (applying these factors in the context of a hostile environment sexual harassment claim).

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). There is no dispute, for the purposes of this summary judgment motion, that plaintiff can establish the first four elements of a hostile work environment claim. However, Georgia-Pacific contends that plaintiff cannot establish the fifth element and asserts that it is not responsible for the alleged hostile environment.

There are two theories under which the employer may be held liable for a hostile work environment: (1) co-worker harassment or (2) supervisor harassment. In the instant case, the alleged harassment was by a supervisor. However, the Supreme Court has established an affirmative defense which may be raised if no tangible employment action has been taken. Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). An employer may avoid liability for a hostile work environment created by a supervisor by demonstrating "(a) that the employer exercised reasonable care to prevent and correct promptly

any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807; see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765,118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).  "Both elements must be satisfied for the defendant-employer to avoid liability, and the defendant bears the burden of proof on both elements." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1313 (11th Cir. 2001) (citations omitted).   Plaintiff asserts that Georgia-Pacific cannot satisfy either element.

The first element of the affirmative defense has two prongs: (1) reasonable care to prevent sexual harassment and (2) reasonable care to correct sexual harassment. Id. at 1314.  To be deemed sufficiently preventive, an anti-harassment policy must be "comprehensive, well-known to employees, vigorously enforced, and provide[ ] alternate avenues of redress." Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997).   The evidence in this case demonstrates that the plaintiff was well aware of the anti-harassment policy and that Georgia-Pacific enforced the policy when inappropriate conduct was reported to the human resource manager.  Additionally, the procedures did not require that a particular chain of command be maintained in reporting any harassment and offered several avenues for complaints to be lodged.   See Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1299 (11th Cir. 2000) (finding that the employer's sexual harassment policy met "the minimum requirements for the Faragher affirmative defense" where  "the procedures did not require that the employee complain to the offending supervisor or through the supervisor's chain of command and the procedures provided multiple avenues of lodging a complaint to assessable, designated representatives."). However, "[t]he ultimate test under Faragher- Ellerth is not whether or not the employer promulgated and disseminated a sexual harassment policy: this is simply a particular way in which the employer can show that it took reasonable care to prevent sexual harassment." Freytes-Torres v. City of Sanford, 270 Fed.Appx. 885, 891, 2008 WL 763216, 3 (11th Cir. 2008) (citation omitted). "The bad-faith administration of a sexual harassment policy can reduce or

eliminate the support that the existence of that policy provides to the employer's attempt to demonstrate reasonable care in preventing sexual harassment." Id. (citation omitted).  In the instant case, management personnel failed to report the conduct to the appropriate parties as required by the policy.  The policy states that any employee that becomes aware of possible harassment, even if they are not themselves a victim, should bring the matter to the immediate attention of their supervisor.  Although the Department Superintendent and the HR Director enforced the policy when the harassment was finally reported to them, there is evidence that other management was aware of the offensive conduct and had received complaints concerning the conduct yet failed to report it to the appropriate personnel or otherwise take reasonable and prompt actions to prevent or correct the conduct.[1]   Although there is evidence that Hunter believed Weaver's conduct was not really harmful (he reportedly responded more than once that Weaver was "just fascinated" with Gibbs), the court finds there is sufficient evidence for a jury to find that Hunter and Thomas had notice that the conduct was sufficiently severe and unwelcome to constitute sexual harassment.   Georgia-Pacific's HR Director testified that its policy requires a supervisor that becomes aware of sexual harassment to report it.  Yet, there is no evidence the management employees were written up or disciplined in any way for failing to report the sexual harassment.  Management's knowledge of the conduct and the extent of the conduct, both in frequency and period of time over which it occurred, indicate that Georgia-Pacific did not successfully control the work environment at the facility. See Mack v. St. Mobile Aerospace Eng'g, 195 F. Appx. 829, 840, 2006 WL 2129661 (11th Cir. 2006) (concluding that a

---

[1] The court notes that the complaints to management in this case appear to have been attempts to make formal complaints.  The evidence does not suggest that the complaints were merely discussions with co-worker friends and there is no evidence that they were `accompanied by statements indicating that the employee did not wish to make an official complaint. See e.g. Nurse "Be" v. Columbia Palms West Hospital L.P., 490 F.3d 1302, 1310 (11th Cir. 2007) (finding the employer was not placed on proper notice and that plaintiff had not taken full advantage of the employer's preventative measures where she insisted her complaint remain confidential and not be reported (citations omitted)).

policy was dysfunctional where the plaintiff's manager failed to report incidents of harassment, and evidence existed that other managers, on at least five occasions, did not report sexual harassment complaints); see also Ellerth, 524 U.S. at 759, 118 S.Ct. at 2267 ("[A]n employer can be liable [for a supervisor's sexual harassment] where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it."). "[T]he power and influence of an employer over the atmosphere in a workplace cannot be overstated." Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11th Cir. 1999). A company's "policy must be found ineffective when company practice indicates a tolerance towards harassment or discrimination." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002). The harassment policy cannot absolve Georgia-Pacific of liability if it was not effectively implemented. Madray, 208 F.3d at 1296-97. The court finds that Georgia-Pacific has failed to demonstrate that it complied with the preventative measures laid out by its own harassment policy. Viewing the evidence in the light most favorable to plaintiff, the court finds that Georgia-Pacific did not vigorously enforce its anti-harassment policy and thereby failed to exercise reasonable care to prevent harassing behavior and correct the harassing conduct.

The court notes that the Eleventh Circuit has found that where an employer has in place a comprehensive, vigorously enforced, anti-harassment policy that provides sufficient avenues of redress, an employee's attempt to report harassment to someone other than the persons specified in that policy does not put the employer on notice. See Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1300 (11th Cir. 2000) ("Therefore, we conclude that Publix cannot be considered to have been placed on notice of [the] harassing behavior by the plaintiffs' informal complaints to individuals not designated by Publix to receive or process sexual harassment complaints."). However, as discussed above, there is evidence that the policy in this case was not vigorously

enforced.[2]  Additionally, the parties dispute whether the policy required plaintiff to report harassment to her direct supervisor, a supervisor in her chain of command or simply to any supervisor at the facility.  The policy did not specifically require that an employee report harassment to their direct supervisor, but only to "your supervisor."  Plaintiff's direct supervisor, Weaver, was the person who allegedly harassed plaintiff and so she could not report the behavior to Weaver.  There remains some issue as to whether the persons plaintiff complained to should be considered plaintiff's supervisors.  Plaintiff complained to crew leader Kervin Thomas and to shift supervisor Willie Hunter.  The parties dispute whether a "lead man" or "crew leader" such as Kervin Thomas should be considered a "supervisor. "  There is also some question as to whether Willie Hunter should be considered plaintiff's supervisor.  However, Thomas and Hunter were the highest ranking personnel at the facility during the swing shift when they were on duty.   Notably, not only did plaintiff go to Thomas and Hunter to report improprieties, but other co-workers did as well.  The evidence suggests that plaintiff and her co-workers, whether or not they directly reported to Thomas and/or Hunter, considered them to be their supervisors.  As the highest ranking personnel at the facility, they were arguably in charge of the entire facility, including plaintiff.  As such, the court finds there is sufficient evidence for a jury to find that plaintiff did, in fact, comply with the policy by reporting the inappropriate conduct to Thomas and Hunter.

Georgia-Pacific moves for summary judgment as to plaintiff's state law assault and battery claim based on the same reason it argued plaintiff's Title VII claim fails.  Georgia-Pacific asserts that actual knowledge in the context of a sexual harassment case is analyzed in the same manner under state law as it is under federal Title VII law.  See Armstrong v. Standard Furniture, 197 Fed. Appx. 830, 835 (11th Cir. 2006) (holding, based upon court's analysis finding

---

[2] Notably, in Madray, the policy in question apparently did not require employees that witnessed or became aware of inappropriate behavior, but were not themselves the victim, to report the conduct. Madray, 208 F.3d. at 1294, n. 4 (quoting policy).

employer showed successful Faragher defense, no employer liability for assault and battery as employer had no notice and when it received notice, took prompt remedial action). The court finds that Georgia-Pacific is not entitled to summary judgment on this claim for the same reason the court found above that summary judgment should not be granted with regard to plaintiff's Title VII claim. Georgia-Pacific has not established as a matter of law that it did not have notice of the alleged wrongful conduct.

Georgia-Pacific has also moved for summary judgment as to any claim for lost wages, interest on lost wages, lost benefits, front pay, reinstatement or any other equitable relief. Plaintiff did not respond to this argument in her opposition to summary judgement. "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted). The court deems plaintiff's claims for lost wages, interest on lost wages, lost benefits, front pay, reinstatement or any other equitable relief to be abandoned.

## CONCLUSION

For the reasons stated above, the motion of defendant, Georgia-Pacific Wood Products LLC, for summary judgment (Docs. 46, 56) is **GRANTED** as to any claim asserted by plaintiff for lost wages, interest on lost wages, lost benefits, front pay, reinstatement or other equitable relief, and the motion is **DENIED** in all other respects.

**DONE** and **ORDERED** this 30th day of September, 2009.

　/s/ Callie V. S. Granade　
CHIEF UNITED STATES DISTRICT JUDGE